FILED

2021 May-03  PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FRANK J. PRICE; and LISA PRICE,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No.: 2:21-cv-155-AMM** |
| **FAMILY DOLLAR STORES OF ALABAMA, LLC; and SHENITA G. TURNER,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

### MEMORANDUM OPINION

This case is before the court on Plaintiffs' Motion To Remand, which includes a request for costs and fees. Doc. 4. For the reasons stated below, the motion to remand is **GRANTED**, and the request for costs and fees is **DENIED**.

## I. BACKGROUND

In their complaint, which was filed in the Circuit Court of Jefferson County, Alabama, Plaintiffs Frank J. Price and Lisa Price ("the Prices") allege that they were shot and wounded in the parking lot of a Family Dollar store in Bessemer. Doc. 1-1 at 5 ¶¶ 15-16. The Prices allege that the assailant was the boyfriend of a Family Dollar employee (Defendant Shenita G. Turner), that the Prices witnessed the assailant "engage in a verbal altercation" with Ms. Turner at the Family Dollar shortly before the shooting, and that the negligence and wantonness of Defendant

Family Dollar Stores of Alabama, LLC ("Family Dollar") and of Ms. Turner caused the Prices' injuries. *Id*. at 5. The Prices allege, *inter alia*, that "based upon prior violent acts, assaults and/or shootings" at the store, "it was foreseeable or should have been foreseeable" to both defendants that "this tragedy would likely occur." *Id*. at 6 ¶ 23. The Prices and Ms. Turner are alleged to be domiciled in Alabama; Family Dollar is a foreign company. *Id*. at 4.

Family Dollar removed the case to this court on the basis of diversity jurisdiction, asserting that the citizenship of Ms. Turner could be ignored for jurisdictional purposes because she was "fraudulently joined in an attempt to defeat diversity jurisdiction." Doc. 1 at 9. Family Dollar asserted that Ms. Turner "owed no legal duty to the [Prices] and cannot be held liable for the intentional criminal acts of a third party." *Id*. To support its contention that Ms. Turner did not owe a legal duty to the Prices, Family Dollar asserted that "[i]t is well-settled under Alabama law that there is no duty on a premises owner" (let alone an employee, Family Dollar argues) "to protect another from the criminal acts of a third party absent special circumstances or a special relationship." *Id*. at 7 (citing *New Addition Club, Inc. v. Vaughn*, 903 So. 2d 68, 76 (Ala. 2004); *Moye v. A.G. Gaston Motels, Inc.*, 499 So. 2d 1368, 1370 (Ala. 1986)) (emphasis omitted).

The Prices filed a motion to remand, Doc. 4, asserting that under *Whataburger, Inc. v. Rockwell*, 706 So. 2d 1220 (Ala. Civ. App. 1997), their

2

allegations could state a claim against Ms. Turner. The Prices also asked for an award of costs and fees under 28 U.S.C. § 1447(c). Doc. 4 at 12.

Family Dollar opposed the motion and filed several exhibits, including what Family Dollar asserts is footage from security cameras at the store "show[ing] the relevant span of time between [the Prices'] arrival at the Family Dollar store through the incident made the basis of this litigation." Doc. 6-1 at 3 ¶ 8. "Based on the surveillance video footage," Family Dollar asserts, the Prices "cannot candidly claim that [the Prices] and the assailant were ever inside the store at the same time, that he threatened [them] inside the store, or that he followed [them] out of the store." Doc. 6 at 7; *see also id*. at 5 (asserting that the footage contradicts the "alleg[ations] by [the Prices] in their Complaint and Motion to Remand"). The Prices filed a reply brief attaching several exhibits, including affidavits by the Prices and by a police officer who responded to the scene after the shooting. Doc. 10.

## II. LEGAL STANDARDS

"In order for an action to be properly removed from a state court, the district court must have been able to exercise original jurisdiction over the original claims." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1556 (11th Cir. 1989). "An additional caveat in diversity actions is that no properly joined and served defendant can be a citizen of the State in which such action is brought." *Id.* (internal quotation marks omitted).

To remove a suit that involves a resident defendant, "the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing *Cabalceta,* 883 F.2d at 1561). Family Dollar has not asserted that the Prices fraudulently pleaded jurisdictional facts, so the question is generally "whether the facts alleged in [the] [p]laintiffs' complaint state even an **arguable** cause of action under [state] law." *Id*. at 1539 (emphasis in original); *Cabalceta*, 883 F.2d at 1562 (holding that when a removing defendant attempts to establish that joinder is fraudulent because the plaintiffs have "no possible cause of action" against the nondiverse defendant, the court analyzes the plaintiffs' potential claim "**under the allegations of the [p]laintiffs' pleadings at the time of removal**") (emphasis in original). "[D]oubtful issues of law due to [an] absence of definite pronouncements by the state supreme court" are resolved in favor of remand. *Crowe*, 113 F.3d at 1540 (internal quotation marks omitted).

If a defendant presents evidence contesting the substantive allegations in the complaint, the court's "authority to look into the ultimate merit of the plaintiff's claims [is] limited to checking for obviously fraudulent or frivolous claims" against the nondiverse defendant. *Id.* at 1542. "[T]he plaintiff need not show that he could survive in the district court a motion for summary judgment filed by th[e] in-state

4

defendant, . . . there need only be a reasonable basis for predicting that the state law **might** impose liability on the facts involved." *Id*. at 1541-42 (emphasis in original) (internal quotation marks omitted). In performing this analysis, "extraordinary care" must be used "to avoid jumbling up motions for remand and motions for summary judgment," because "the jurisdictional inquiry must not subsume substantive determination." *Id.* at 1538, 1542 (internal quotation marks omitted).

Ordinarily, the rule is that the facts alleged by the plaintiff control whether a potential cause of action exists. *Id.* at 1539; *Cabalceta,* 883 F.2d at 1562. Put differently, the removing defendant may not through its own evidence "[m]erely . . . traverse the allegations upon which the liability of the resident defendant is rested." *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 150, 152 (1914). But there is an exception under *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005), to that rule. In *Legg*, the plaintiffs brought "one of thousands of cases brought by plaintiffs across the country who claim[ed] they suffer[ed] from valvular heart disease because they took one of Wyeth's diet drugs." *Id*. at 1320. The Eleventh Circuit recognized "[a] common strategy employed by the plaintiffs in th[o]se cases . . . to name local parties, often Wyeth's local sales representatives, as defendants" in an attempt to avoid removal and consolidation in multidistrict litigation. *Id*. This strategy was a well-known "sham" and there were "dozens of district court decisions finding that Wyeth sales representatives were fraudulently joined as defendants to defeat federal

diversity jurisdiction." *Id*. at 1320-21 (quotation marks omitted). In other words, the strategy of joining local sales representatives in suits against a drug manufacturer was exactly the sort of "obviously fraudulent" ploy that a court is "checking for" in a fraudulent joinder analysis. *Crowe*, 113 F.3d at 1542.

The drug manufacturer attached to its notice of removal affidavits by the three defendant sales representatives. *Legg*, 428 F.3d at 1322. Two of the affidavits attacked as fraudulent jurisdictional facts alleged in the complaint. *See id*. In the third affidavit, a sales representative swore "that she did not know of [the drug's] alleged connection with valvular heart disease." *Id*. Put differently, she did not submit evidence to contest a "jurisdictional" fact—she submitted evidence to deny an element of the plaintiffs' claim for negligent misrepresentation against her, like the defendant in *Chesapeake & O. R. Co.*, who in its verified petition for removal "[m]erely . . . traverse[d] the allegations upon which the liability of the resident defendant is rested." 232 U.S. at 150, 152. The plaintiffs submitted evidence in response, but far from casting doubt on the sales representative's sworn statement, that evidence "in fact reinforce[d]" it. *Legg*, 428 F.3d at 1322.

In summary, the case against the resident defendant in *Legg* was part of a long pattern of litigation using sham allegations to attempt fraudulent joinder, the defendant submitted an affidavit that negated an element of the plaintiffs' claim against the resident defendant, and the plaintiffs did not dispute the affidavit. The

Eleventh Circuit held that under these circumstances, "the court cannot . . . resolve the facts in the [p]laintiffs' favor based solely on the unsupported allegations in the [p]laintiffs' complaint." *Id*. at 1323. To do so would reward the plaintiffs for reaching into a "bag of tricks" to avoid federal jurisdiction. *Id*. at 1325 (internal quotation marks omitted).

## III. ANALYSIS

### A. Remand

In its notice of removal, Family Dollar did not rely on any factual contentions other than those alleged in the complaint to support its assertion that Ms. Turner was fraudulently joined. *See* Doc. 1. Indeed, Family Dollar asserted that "[i]t is clear from [the Prices'] Complaint" that the Prices "have no viable cause of action against" Ms. Turner because she "was neither the premises owner nor the manager of the subject Family Dollar store on July 27, 2020," and thus "owed no legal duty to the [Prices]." *Id*. at 8-9. Family Dollar cited two controlling precedents, *New Addition Club, Inc.* and *Moye*, to support its contention that the Prices could not possibly state a claim against Ms. Turner. Doc. 1 at 7. Family Dollar also attempted to distinguish a decision by the Southern District of Alabama that, according to Family Dollar, "addressed whether naming a store manager in a slip and fall premises liability action defeated diversity of citizenship." *Id*. at 6-7 (citing *Kimbrough v. Dial*, No. 06-0585-WS-C, 2006 WL 3627102 (S.D. Ala. Dec. 11, 2006)).

The Prices filed a motion to remand, asserting, *inter alia*, that under *Whataburger, Inc.*, 706 So. 2d 1220, their allegations against Ms. Turner are sufficient to plead that "it was foreseeable to Ms. Turner that her boyfriend was going to assault these customers" and that she could be liable to them for her failure to protect the plaintiffs under such circumstances. Doc. 4 at 11. The Prices further stated that "there has been no discovery thus far." *Id*.

In response, Family Dollar submitted "surveillance video footage" which it asserts "shows [that the complaint] is an inaccurate description of the facts." Doc. 6 at 3. This footage is not a basis for the court to deny the Prices' motion to remand for two reasons. *First*, the security footage is not sworn testimony that obviously negates an element of the Prices' claim against Ms. Turner—Family Dollar uses it to suggest a more "[]accurate description" of what happened. *Id.* Accordingly, the footage is unlike the affidavit in *Legg*. For the court to determine whether the complaint or footage from a security camera more accurately describes what happened, and then to determine whether the footage reveals circumstances under which a duty could be owed by Ms. Turner to the Prices, would go beyond the court's authority to "check[] for obviously fraudulent or frivolous claims." *Crowe*, 113 F.3d at 1542.

*Second*, unlike the plaintiffs in *Legg*, who did not respond to the defendant's affidavits with evidence to reaffirm the allegations in the complaint, the Prices

responded to the security footage with their own affidavits and that of a police officer. *See* Docs. 10-1, 10-2, 10-3. Family Dollar asserts that the footage shows that "the interaction between [the Prices] and the assailant occurred outside in the parking lot of Family Dollar and outside the view of Turner, and not in the store as alleged by [the Prices] in their Complaint," Doc. 6 at 5, but Mr. Price swore in his affidavit that when the Prices entered the store, Ms. Turner "was involved in a loud and heated argument" with the assailant, and that Ms. Turner "was on the telephone with [the assailant] while she was talking" to the Prices in the store, Doc. 10-1 ¶¶ 2-3. The police officer who responded to the shooting swore that Ms. Turner "told [him] that [the assailant] got angry at Frank Price because Mr. Price asked [Ms. Turner] if [the assailant] was trying to jump on her and Mr. Price tried to protect her." Doc. 10-3 ¶ 5. By responding with sworn testimony about "the interaction between [the Prices] and the assailant," *see* Doc. 6 at 5, the Prices did what the plaintiffs in *Legg* did not: they maintained that there is "some question of fact" which must be resolved in their favor. 428 F.3d at 1323.

Ultimately, removability does not turn on whether a jury viewing the security footage could find for the Prices against Ms. Turner, but whether, resolving issues of fact and ambiguities of state law in favor of the Prices, Family Dollar has established that the Prices cannot possibly state a claim against Ms. Turner. *Crowe*, 113 F.3d at 1541-42; *Cabalceta*, 883 F.2d at 1562. Family Dollar asserts that two

controlling cases demonstrate that there is no such possibility: *New Addition Club, Inc.* and *Moye*. Doc. 1 at 7; Doc. 6 at 6. According to Family Dollar, under these cases "there is no duty on a **premises owner** to protect another from the criminal acts of a third party absent special circumstances or a special relationship," so there is no duty on "a mere employee." Doc. 6 at 6-7 (emphasis in original). But neither case supports Family Dollar's position.

In *New Addition Club, Inc.*, a fight in a nightclub was continued outside in the parking lot, where one patron shot another dead. 903 So. 2d at 69-70. The decedent's estate sued the nightclub and one of its owners (the one who had worked at the club that night), asserting various negligence/wantonness claims. *Id.* at 70. The trial court denied the defendants' motion to dismiss and their motion for summary judgment, but at the close of evidence at trial, granted their motion for judgment as a matter of law on all claims except "negligence and/or wantonness in the context of premises liability." *Id.* at 70. After the jury found for the estate, the defendants (which the supreme court referred to "collectively [as] 'the Club'") appealed. *Id.* at 70. The supreme court analyzed whether, based on the evidence presented at trial, "the particular criminal activity" (the shooting) was foreseeable to "the Greens"—*i.e.*, the individual defendant and his wife and brother, who were working at the club that night. *Id.* at 69, 75-76 (emphasis omitted). The supreme court held that it was not foreseeable. *Id.* at 76 & n.10. Accordingly, "the Club"—*i.e.*, the individual

defendant and his coworkers that night—had no duty to protect the decedent from the assailant. *Id*. *New Addition Club, Inc.* demonstrates that under Alabama law, the issue whether an employee owes a duty to a plaintiff to protect from third-party criminal acts generally turns on evidence regarding foreseeability developed during discovery and at trial; *New Addition Club, Inc.* does not suggest, let alone hold, that the Prices cannot possibly state a cause of action against Ms. Turner as an individual defendant.

*Moye*, which was decided before *New Addition Club, Inc.*, does not alter this outcome. In *Moye*, after a dance at a motel ended, one dancegoer shot another dead in front of the motel. 499 So. 2d at 1369-70. The decedent's estate sued the motel and an individual defendant (the owner of the security service who employed the security guards at the dance), and the trial court granted summary judgment in favor of the defendants. *Id*. at 1369. *Moye* "discuss[es] the liability of a **premises owner** for the **criminal** acts of third persons," but the case is "not instructive" about an individual's "duty to foreseeable third parties, based on a general obligation imposed in tort to act reasonably." *Taylor v. Smith*, 892 So. 2d 887, 893 (Ala. 2004) (emphasis in original) (internal quotation marks omitted); *see also Southeastern Greyhound Lines v. Callahan*, 13 So. 2d 660, 663 (Ala. 1943) (distinguishing a bus driver's personal duty to a passenger, which is heightened when on notice of a defect in the passenger's seat, from his employer's (the carrier's) duty to a passenger, which is

11

broader than the driver's)). Further, as in *New Addition Club, Inc.*, the outcome in *Moye* turned on specific facts in evidence regarding foreseeability, not on whether the complaint could state a claim for negligence when third-party criminal activity caused the injury: "The uncontroverted evidence in this case is that there had not been a single criminal incident at any prior teen dance at the Gaston motel. This is an objective fact, and [the plaintiff] submits nothing in opposition to this fact, and [the plaintiff] offers no other evidence to indicate the defendants were on notice that this criminal act might occur." *Moye*, 499 So. 2d at 1373.

Because neither of Family Dollar's precedents support its assertion that the Prices cannot possibly state a claim against Ms. Turner, Family Dollar failed to establish that Ms. Turner was fraudulently joined, and her citizenship may not be ignored for purposes of the court's diversity analysis. Accordingly, complete diversity does not exist, this court lacks subject matter jurisdiction to hear this case, and the motion to remand is granted.

### B. Costs and Fees

28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The fee-shifting provision was included in the statute because "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties,

12

and wastes judicial resources." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005). However, the provision was not meant to discourage removal in all cases except where the right to remove is "obvious." *Id*. The test is whether "the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

Although Family Dollar's arguments supporting its assertion that the Prices could not possibly state a claim against Ms. Turner were unsuccessful, those arguments were not based on an objectively unreasonable interpretation of the relevant precedent, and it was not "obvious" that the precedent Family Dollar cited did not support its right to remove. *See id*. at 140. Accordingly, the court declines to find that Family Dollar's basis for seeking removal was objectively unreasonable, and the Prices' request for costs and fees is denied.

## IV. CONCLUSION

For the foregoing reasons, the motion to remand, Doc. 4, is **GRANTED**, and the request for costs and fees is **DENIED**.

**DONE** and **ORDERED** this 3rd day of May, 2021.

_____

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE